IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff, | CASE NO. 8:25-CR-0090 |
| v. | **BRIEF IN SUPPORT OF MOTION<br>TO SUPPRESS** |
| HELEDORO LUVIANO-CABRERA,<br>Defendant. | |

COMES NOW, Heledoro Luviano-Cabrera, by and through his attorney Renee L. Mathias, Shapiro Riha Law L.L.P., and submits this brief in support of Defendant's Motion to Suppress dated August 21st, 2025.

## I.    INTRODUCTION AND BACKGROUND FACTS

On or about January 3, 2025, law enforcement officers conducted a traffic stop of a vehicle in which Mr. Cabrera was a passenger. He was detained at the scene and transported to the Omaha Police Headquarters for questioning. Defense exhibit 100 which will be provided prior to the hearing, contains the audio and video of the interrogation. The interrogation was conducted in Spanish; therefore, undersigned counsel utilized the assistance of a translator to translate from Spanish into English.

After approximately one hour and ten minutes, Detective Juan Jimenez (hereinafter "Jimenez") entered the interrogation room and began posing introductory questions to Mr. Cabrera. It is important to note that Mr. Cabrera is illiterate, has never attended school, and has resided in the United States for only three years. Furthermore, Mr. Cabrera has no prior criminal history and therefore lacks any familiarity with the procedures or protocols associated with custodial interrogation.

The following are excerpts from the exchange between Detective Jimenez and Mr. Cabrera during the custodial interview. Mr. Cabrera understood that Detective Jimenez was a police officer. At approximately 2:04, Detective Jimenez advised Mr. Cabrera that he had the right to remain silent and not make any statements or answer questions. Because Mr. Cabrera demonstrated difficulty understanding, Detective Jimenez repeated and further explained the advisement. At

1

approximately 2:05:01, Detective Jimenez re-read the warning, and at 2:05:02, Mr. Cabrera responded "yes," but only after noticeable hesitation.

Detective Jimenez advised Mr. Cabrera that anything he said could be used against him in court and asked if he understood. At approximately 2:05:12, Mr. Cabrera clearly responded, "No." Detective Jimenez attempted to clarify by telling Mr. Cabrera that his interview could be used against him, but that it did not necessarily mean it would be used against him. This explanation only added to the confusion. At approximately 2:05:37, Mr. Cabrera, still unsure of what was happening, asked, "What do I put there?" further demonstrating that he had no meaningful understanding of the rights being read to him.

At approximately 2:06:18, Detective Jimenez advised Mr. Cabrera that he had the right to consult with an attorney and to have the attorney present during questioning and then asked if he understood. At 2:06:22, Mr. Cabrera replied, "What do you mean?" In response, Detective Jimenez stated that if Mr. Cabrera wanted a lawyer present, then no questions could be asked because "it takes quite a while, and we don't have time to wait that long." At 2:06:57, Mr. Cabrera asked, **"What lawyer am I going to get?"** a clear indication that he was seeking counsel. This exchange demonstrates both that Mr. Cabrera did not comprehend the warning as delivered, and that he affirmatively expressed a desire for an attorney, which should have immediately terminated the interrogation.

Detective Jimenez then told Mr. Cabrera that if he did not have the money to hire a lawyer, the court would appoint one. At approximately 2:07:27, Mr. Cabrera responded that he did not know where he would get a lawyer. Rather than explaining that counsel would be appointed to assist him during questioning, Detective Jimenez shifted the focus to the court process, stating at 2:08:47 that the court would appoint him a lawyer for court proceedings, and that was what the warning meant. Jimenez again asked, "If you don't have the money to hire a lawyer, the court will appoint one to represent you—do you understand?" At 2:09:00, Mr. Cabrera answered "yes," but immediately added, **"I don't understand what you are telling me."** Despite this clear expression of confusion, Jimenez did not clarify or attempt to ensure comprehension; instead, he immediately asked, "Knowing your rights, are you willing to talk to me?" Mr. Cabrera replied "yes," and Jimenez responded, **"that's perfect."** At the conclusion of the interview Jimenez presented Mr. Cabrera with a permission to search digital media device and he consented.

2

This exchange demonstrates that Mr. Cabrera neither understood the Miranda advisement nor knowingly waived his rights, and that the officer's explanation affirmatively minimized and misrepresented the right to counsel by limiting it to future court proceedings rather than interrogation.

## II. MR. CABRERA INVOKED HIS RIGHT TO COUNSEL
### A. Mr. Cabrera's Statement

The Fifth Amendment prohibits the use of statements obtained from a defendant during custodial interrogation unless the government demonstrates that law enforcement first provided the procedural safeguards established in *Miranda v. Arizona*, 384 U.S. 436 (1966). These include advising a suspect of (1) the right to remain silent, (2) that any statement can be used against him in court, (3) the right to consult with counsel, and (4) the right to have counsel present during questioning. Id. at 467–73.

Once a suspect invokes the right to counsel, the Supreme Court has imposed a "rigid" rule: interrogation must immediately cease until an attorney is present. *Edwards v. Arizona*, 451 U.S. 477, 484–85 (1981); *Minnick v. Mississippi*, 498 U.S. 146, 153 (1990). Any statement taken after such invocation, unless the suspect initiates further conversation, is inadmissible. *Arizona v. Roberson*, 486 U.S. 675, 681 (1988).

The standard for invocation is objective: a defendant must make a clear and unambiguous request for counsel, such that a reasonable officer in the circumstances would understand the request. *Davis v. United States*, 512 U.S. 452, 459 (1994). Officers are not required to clarify ambiguous statements, but when a suspect directly inquires about a lawyer, *Edwards* is triggered.

Finally, warnings themselves must "reasonably convey" all essential rights, including the right to have counsel present during questioning. *Florida v. Powell*, 559 U.S. 50, 60 (2010). Warnings that obscure or minimize this right are constitutionally inadequate.

The interrogation record demonstrates that Mr. Cabrera directly asked, **"What lawyer am I going to get?***"* at approximately 2:06:57 of the interview. That inquiry cannot be characterized as ambiguous; it is a clear expression of confusion coupled with an unmistakable request for the appointment of counsel. Under *Davis*, 512 U.S. at 459, a reasonable officer would understand this

3

as an invocation of the right to counsel. At that moment, Jimenez was required to terminate the interrogation.

When Mr. Cabrera requested the presence of counsel, the agents were required to cease the interrogation until an attorney was made available. *Miranda v. Arizona*, 384 U.S. 436, 474 (1966). The right to counsel is critical to our legal system because of the unique ability to protect a suspect's Fifth Amendment rights while undergoing custodial interrogation. *Fare v. Michael C.*, 442 U.S. 707, 719 (1979). Moreover, the lawyer's presence helps guard against overreaching by the police and ensures that any statements actually obtained are accurately transcribed for presentation into evidence. *Id.* An accused, such as the Mr. Cabrera, who has invoked a right to deal with law enforcement authorities only through counsel, is not subject to further interrogation until counsel has been made available, unless the accused has initiated further communications or conversations with law enforcement. *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). The statements made during his interview were without the assistance of counsel and in violation of his Fifth Amendment rights and should not be admissible at trial.

### B. Mr. Cabrera's Consent to Search Cell Phone.

Although consent to search is generally not itself testimonial or incriminating and therefore falls outside the Fifth Amendment's privilege against self-incrimination, see *Cody v. Solem*, 755 F.2d 1323, 1330 (8th Cir. 1985), the circumstances here are far from an ordinary consent case. Mr. Cabrera's purported consent to search his cellphone, after his incriminating statements, were obtained only after he had invoked his Fifth Amendment right to deal with law enforcement through counsel. Any purported consent or waiver secured in that setting was constitutionally invalid because it flowed directly from a violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Edwards v. Arizona*, 451 U.S. 477 (1981).

The Supreme Court has made clear that once a suspect invokes the right to counsel, "any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is presumed the product of the compelling pressures inherent in custodial interrogation." *Arizona v. Roberson*, 486 U.S. 675, 681 (1988). This presumption recognizes that statements or derivative evidence obtained after invocation are inherently coercive. As the Court explained in *United States v. Patane*, "those subjected to coercive police interrogations have an

automatic protection from the use of their involuntary statements or evidence derived from those statements in any subsequent criminal trial." 542 U.S. 630, 640 (2004).

Here, Mr. Cabrera's so-called consent to hand over his cellphones did not stem from a voluntary choice but from questioning that persisted in direct violation of *Miranda*, *Edwards*, *Roberson*, *Minnick v. Mississippi*, 498 U.S. 146 (1990), Suppressing only the statement, while admitting the physical evidence derived from it, would incentivize precisely the type of unconstitutional tactics these cases prohibit encouraging officers to ignore an invocation of rights in hopes of obtaining incriminating leads. Courts have rejected this logic, recognizing that to admit derivative physical evidence while suppressing the statement "would create a disincentive for law enforcement to stop questioning a detainee once he or she invoked the right to counsel." *United States v. Gilkeson*, 431 F. Supp. 2d 270, 294 (N.D.N.Y. 2006).

Accordingly, both Mr. Cabrera's statements and the evidence obtained from the search and seizure of his cellphone must be suppressed.

### III.     MR. CABRERA DID NOT KNOWING AND VOLUNTARILY WAIVE HIS MIRANDA RIGHTS.

#### A. Miranda Rights

The United States Constitution protects individuals from self-incrimination. U.S. Const. amend. V. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court "adopted a set of prophylactic measures designed to safeguard this constitutional guarantee…." *J.D.B. v. North Carolina*, 564 U.S. 261, 269 (2011). Before a suspect in custody is questioned, law enforcement must warn him that "he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444. These warnings are "an absolute prerequisite in overcoming the inherent pressures of the interrogation atmosphere." *Id*. at 468, 471. While the warnings need not be given verbatim, law enforcement must reasonably convey the *Miranda* rights to the accused. *Duckworth v. Eagan*, 492 U.S. 195, 202-03 (1989); *California v. Prysock*, 453U.S. 355, 359-60 (1981); *Miranda*, 384 U.S. at 476.

Specific to the right to counsel, "an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation…" *Miranda*, 384 U.S. at 471. The Court described the right to counsel warning as "an absolute prerequisite to interrogation." *Id.* It also held "the need for counsel to protect the Fifth Amendment privilege comprehends not merely a right to consult with counsel prior to questioning, but also to have counsel present during any questioning if the defendant so desires." *Id.* at 469-70.

In addition, it is necessary to warn, the individual, that if he is indigent a lawyer will be appointed to represent him. Without this additional warning, "the admonition of the right to consult with counsel would often be understood as meaning only that he can consult with a lawyer if he has one or has the funds to obtain one." *Id*. at 473. The Court further observed, "the warning of a right to counsel would be hollow if not couched in terms that would convey to the indigent the person most often subjected to interrogation the knowledge that he too has a right to have counsel present." *Id.* Thus, "only by effective and express explanation to the indigent of this right can there be assurance that he was truly in a position to exercise it." *Id.*

### B. Waiver of Miranda Rights

An "accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived (*Miranda*) rights' when making the statement." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)); *Miranda*, 384 U.S. at 444. Courts apply a two-part inquiry to determine whether the accused waived effectuation of his or her *Miranda* rights. *Moran v. Burbine*, 475 U.S. 412, 421 (1986). "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* "Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id*. (often referred to as a "knowing and intelligent" waiver). "Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived. *Id.*

### C. MR. CABRERA DID NOT KNOWING AND VOLUNTARILY WAIVE HIS MIRANDA RIGHTS.

In addition to being voluntary, a waiver of Miranda rights must be knowing and intelligent. *Fare* vs. Michael C. 442 U.S. at 724-25. The Miranda warnings ensure a waiver is knowing and intelligent by requiring the suspect to be fully advised of the constitutional privilege against self-incrimination. *Colorado v. Spring*, 479 U.S. 564, 574 (1987). A knowing and intelligent waiver is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Castro-Higuero*, 473 F.3d 880, 885-86 (8th Cir. 2007)

In *California v. Prysock,* the United States Supreme Court found law enforcement's representations about a suspect's right to counsel were accurate. 453 U.S. at 361-62. Prysock, a juvenile at the time, was informed he had the right to counsel before he was questioned, he had a right to have counsel present during all questioning, and he had the right to have counsel appointed at no cost. *Id*. at 356-57. Prysock's parent then asked law enforcement if Prysock would still have an attorney later if he gave a statement without counsel at the time of the interrogation. *Id*. at 357. Law enforcement informed the parent that Prysock "would have an attorney when he went to court and that 'he could have one at this time if he wished one.'" *Id*. Prysock's motion to suppress was unsuccessful in the trial court. The Supreme Court found the warnings adequate. *Id*. at 361-62. The Court observed *Miranda* did not require a precise formulation or verbatim recital of the warnings to be given. *Id at*. 359-60. According to the Court, when law enforcement links the right to counsel "to a future point in time after police interrogation," the individual is "not fully advised"… of his right to appointed counsel before such interrogation." *Id*. at 360.

This matter is distinguishable from *Prysock*. When Mr. Cabrera expressed confusion about how he would obtain an attorney, Detective Jimenez shifted the focus to future proceedings, stating that the court would appoint him a lawyer for court appearances. It is also significant that, early in the interview, Jimenez emphasized that Mr. Cabrera was not under arrest and that he did not know whether an arrest would occur. Thus, Jimenez's repeated references to

court proceedings reinforced the impression that the right to counsel was tied only to a future stage, not to the interrogation itself.

This matter is more akin to two cases the Supreme Court discussed when distinguishing the facts in *California v. Prysock*, 453 U.S. 355 (1981). In both of those cases, the warnings were found defective because "the reference to appointed counsel was linked to a future point in time after police interrogation." *Id.* at 360 (discussing *United States v. Garcia*, 431 F.2d 135 (9th Cir. 1970), and *People v. Bolinski*, 260 Cal. App. 2d 705 (1968)).

In *Garcia*, "agents gave the suspect several different versions of the Miranda bundle of warnings," but "on no occasion was a warning given fully complying with Miranda." 431 F.2d at 134. At one point, Garcia was told she had the right to counsel "when she answered any questions," and at another, she was advised that an attorney would be appointed to represent her when she first appeared before the United States Commissioner or the court. *Id.* The Ninth Circuit stressed that "the offer of counsel must be clarion and firm" and concluded that the warnings "failed to adequately inform Garcia of her right to counsel before she said a word." *Id.*

Likewise, in *Bolinski*, two sets of warnings were given, both defective. One advised that counsel would be appointed "if he was charged," and the other, while transporting the defendant from Illinois to California, advised that an attorney would be appointed once he arrived in California. The California Court of Appeal concluded that such warnings failed because they tied the appointment of counsel to a future stage, not to the interrogation itself, and therefore the defendant could not have knowingly waived his rights. 260 Cal. App. 2d at 721, 723.

To determine whether Defendant's waiver was knowing and intelligent, the Court must consider the totality of the circumstances. *Moran v. Burbine*, 475 U.S. at 421. In reviewing the totality of the circumstances, it is clear that Mr. Cabrera's waiver was not known and intelligently made.

**Illiteracy and Lack of Education:** Mr. Cabrera is illiterate and has never attended school. His inability to read or write made him entirely dependent on the oral explanation of his rights. This heightened the need for clear and accurate advisement, which Detective Jimenez failed to provide.

**Language Barrier:** The interrogation was conducted in Spanish, and although Mr. Cabrera speaks the language, the complexity of the rights required careful explanation. The record shows repeated confusion on his part, including responses such as "What do you mean?" and "I don't understand what you are telling me." These statements confirm he did not grasp the meaning of the advisements.

**Lack of Prior Criminal Experience and Limited Time in the United States:** Mr. Cabrera has no prior criminal history and no familiarity with custodial interrogation procedures. He has resided in the United States for only three years, further compounding his lack of knowledge about the American criminal justice system and the constitutional rights afforded to individuals under U.S. law. Given Defendant's apparent lack of experience with federal (or any) law enforcement, he was not familiar with the rights afforded to him. See *United States v. Vinton*, 631 F.3d 476, 482 (8th Cir. 2011) ("A history of interaction with the criminal justice system supports an inference that an interviewee is familiar with his constitutional rights and that his statements to the police are voluntary."). Here, the opposite is true: because Defendant had no such experience, he had to rely exclusively on the contents of the Statement of Rights and what the agents told him. The misleading advisements therefore carried even greater weight in shaping his understanding.

**Misrepresenting the Right to Counsel and Pressed for a Waiver Despite Clear Confusion**: Beyond the deficiencies identified above, the specific sequence of events confirms that suppression is required. At approximately 2:07:27, Mr. Cabrera stated that he did not know where he would get a lawyer. Rather than explaining that counsel could be appointed immediately to assist during questioning, Jimenez told him that if he could not afford one, the court would appoint one for him. At 2:08:47, Jimenez reiterated that the court would appoint a lawyer for court proceedings and expressly stated that this was "what the warning meant."

When pressed again "If you don't have the money to hire a lawyer, the court will appoint one to represent you, do you understand?", Mr. Cabrera answered "yes," but immediately clarified, "I don't understand what you are telling me." Despite this direct admission of confusion, Jimenez did not attempt to clarify or ensure comprehension. Instead, he immediately

pivoted to securing a waiver, asking, "Knowing your rights, are you willing to talk to me?" When Mr. Cabrera reluctantly replied "yes," Jimenez responded, "**that's perfect**."

This sequence is constitutionally defective in multiple respects. First, by stating earlier that if Mr. Cabrera wanted a lawyer "no questions could be asked" because it would take too long to bring one down and "they didn't have time to wait," Jimenez actively discouraged invocation of the right to counsel. Second, by repeatedly tying the right to future court proceedings, Jimenez affirmatively misrepresented the scope of *Miranda* protections. Third, Mr. Cabrera's own statements—"What lawyer am I going to get?" and "I don't understand what you are telling me"—reflected both an attempt to invoke counsel and a lack of comprehension. Finally, Jimenez's response of "that's perfect" upon securing a hesitant "yes" underscores that the waiver was obtained despite clear confusion and misrepresentation.

For the foregoing reasons, Defendant respectfully requests that the Court suppress all statements obtained from Mr. Cabrera during the custodial interrogation conducted on January 3, 2025. The record demonstrates that the Miranda advisements were constitutionally deficient, that Mr. Cabrera did not knowingly or intelligently waive his rights, and that the interrogation continued despite his clear confusion and request for counsel. Suppression is therefore required under *Miranda* and its progeny.

### IV.    CONCLUSION:

First, the record establishes that Mr. Cabrera invoked his right to counsel when he asked, "What lawyer am I going to get?" At that point, the interrogation should have ceased immediately. Any further questioning after this request violated the clear command of *Miranda* and requires suppression of all subsequent statements.

Alternatively, even if the Court concludes that Mr. Cabrera did not unequivocally invoke his right to counsel, the government has not met its burden of demonstrating a knowing and intelligent waiver. Mr. Cabrera is illiterate, has only lived in the United States for three years, has no prior criminal experience, and repeatedly expressed confusion about the rights read to him. Detective Jimenez compounded this confusion by mischaracterizing the right to counsel as one that applied only to future court proceedings and by discouraging Mr. Cabrera from exercising

that right by stating there was "no time" to wait for an attorney. Under the totality of the circumstances, any purported waiver was invalid.

For these reasons, Defendant respectfully requests that the Court suppress all statements obtained from Mr. Cabrera during the custodial interrogation conducted on January 3, 2025.

Dated this 21st day of August 2025.

                                            Respectfully submitted,
Heleodoro Luviano-Cabrera, Defendant.

/s/ Renee L Mathias
Renee L Mathias, #23040
SHAPIRO RIHA LAW, L.L.P.
1001 Farnam Street, Third Floor
Omaha, NE 68102
(402) 341-0700
rmathias@theomahalawyers.com
Lawyers for Defendant

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing was served upon the Assistant U.S. Attorney by electronically servicing a copy of the same via CM/ECF, on this 21st day of August 2025.

                                           Respectfully submitted,
                                           Heleodoro Luviano-Cabrera, Defendant.

                                           /s/ Renee L Mathias
                                         Renee L Mathias, #23040
                                         SHAPIRO RIHA LAW, L.L.P.
                                         1001 Farnam Street, Third Floor
                                         Omaha, NE 68102
                                         (402) 341-0700
                                         rmathias@theomahalawyers.com
                                         Lawyers for Defendant