## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>HELEODORO LUVIANO-CABRERA,<br><br>Defendant. | **8:25CR90**<br><br>**FINDINGS AND RECOMMENDATION** |

This matter comes before the Court on the Motion to Suppress (Filing No. 38) filed by Defendant, Heleodoro Luviano-Cabrera. Defendant moves to suppress statements he made during an interrogation by law enforcement, and any evidence that law enforcement obtained because of those statements, particularly any evidence obtained from the consent to search Defendant's cell phone. Defendant filed a brief (Filing No. 39) in support of the motion and the Government filed a brief in response (Filing No. 44).

The Court held a pre-hearing status conference with counsel on September 25, 2025, (Filing No. 48), and held an evidentiary hearing on the motion on October 8, 2025. (Filing No. 49). Defendant was present at the evidentiary hearing proceeding with his attorney, Renee Mathias. The Government was represented by Assistant United States Attorney, Martin Conboy. The Court received into evidence, without objection, the Government's exhibits 1-5. (TR. 3-5, 14-15). Officer Juan Jimenez, ("Officer Jimenez"), a police officer with the Omaha Police Department, ("OPD"), testified on behalf of the Government. Jay Rodriguez, ("Mr. Rodriguez"), testified on behalf of the Defendant. A transcript (TR.) of the hearing was prepared and filed on October 17, 2025. (Filing No. 54). The matter is now fully submitted to the Court. For the following reasons, the undersigned magistrate judge will recommend that the motion be denied.

## BACKGROUND

Near the end of December 2024, Officer Jimenez[1] received a "citizen's tip regarding a potential clandestine lab." (TR. 10-11). This tip came from the owner of an Airbnb, who provided

---

[1] Officer Jemenez has been employed with OPD for over eleven years. At the time of the underlying events, he was assigned to the narcotics unit of OPD. (TR. 10).

videos to Officer Jimenez.  (TR. 11).  Officer Jimenez decided to place the location under surveillance.

On January 3, 2025, surveilling OPD officers watched individuals leave the Airbnb carrying blue totes into a vehicle.  OPD officers executed a traffic stop of the vehicle, recovering a "large amount of methamphetamine" inside of the totes.  (TR. 11).  Other OPD officers maintained their surveillance of the Airbnb, and observed two other people leaving the residence to get into a different vehicle.  (TR. 11).  Officer Jimenez, accompanied by other officers, conducted a traffic stop of this second vehicle.  Defendant and his brother, co-defendant Eric Luviano-Cabrera, were the occupants of the vehicle.  (TR. 11-12).  Following the traffic stop, patrol officers brought Defendant back to the police department for an interview with Officer Jimenez.[2]  (TR. 12).  Officer Jimenez also obtained a search warrant for the Airbnb residence and recovered over forty pounds of methamphetamine.  (TR. 12).

Defendant was alone in the interview room with Officer Jimenez for the interview.  (TR. 12).  Defendant speaks Spanish and does not speak, read, or write any English.  (*See* TR. 2).  Officer Jimenez is fluent in both English and Spanish, and conducted the entire interview with Defendant in Spanish.  (TR. 19).  Before the interview began, Defendant requested more water and to use the restroom, both of which Officer Jimenez facilitated.  (TR. 17-18).  Officer Jimenez then read a Spanish copy of a *Miranda* rights advisory form to Defendant.  The rights advisory form contained the preliminary advisement, "I would like to advise you that I am a police officer," followed by the four *Miranda* rights.  Each advisement was accompanied by the question, "Do you understand?" The last part of the form provides, "Understanding your rights, will you speak with me?"  (TR. 13; Ex. 5 at 1).  Officer Jimenez wrote "si" (yes) in response to all six questions on Defendant's behalf. (TR. 12-13, 27; Ex. 1).  Defendant did not sign the rights advisory form.  (TR. 15-16).

Officer Jimenez testified that during the interview, Defendant "seemed like a normal adult male," did not appear to be under the influence of drugs or alcohol, and did not have any observable physical disabilities or limitations.  (TR. 17).  Officer Jimenez was armed during the interview, but believes his firearm was in its holster covered by his sweater.  The interview took place in conversational tones, and Officer Jimenez did not raise his voice or yell, and did not make any direct or indirect threats.  (TR. 18).  Officer Jimenez testified to his opinion that Defendant

---

[2] An audio-video recording of Defendant's interview is contained in both Exhibit 3 and Exhibit 4, which are two different angles of the same interview.  (TR. 14).

understood what Officer Jimenez was saying in Spanish and had no issues with the dialect.  (TR. 20).  Officer Jimenez testified he understood Defendant's questions and attempted to accommodate Defendant by taking time to answer any questions he had during the interview.  (TR. 20).

Prior to the evidentiary hearing, Officer Jimenez reviewed the audio-visual recording of Defendant's interview, and at the request of the Government, transcribed an English translation of the rights advisory portion of the interview.  (TR. 15; Ex. 5).  According to his translation, Officer Jimenez advised Defendant that he was a police officer and asked Defendant if he understood; Defendant responded yes.  (Ex. 5 at 1).  Officer Jimenez then advised Defendant, "You have a right to remain silent and not make any statements or answer any of my questions."  When asked if he understood, Defendant replied, "Then I can't ask you any question."  (Ex. 5 at 1).  Officer Jimenez responded:

> No, what it says here you can remain silent and if I ask you a question you don't have to answer it. You can stop this interview any time you want. If your [sic] uncomfortable and don't want to answer my questions just tell me that you don't want to answer them. If you want to answer certain questions, then yes and if you don't want to answer other question you don't have to.

(Ex. 5 at 2).  Defendant responded, "If I don't understand a question do I tell you the next one or how?"  (Ex. 5 at 2).  Officer Jimenez explained that it is "like a conversation like what you and me are doing right now," and asked again whether Defendant understood his right to remain silent, "Yes or no."  Defendant responded, "Yes."  (Ex. 5 at 2).

Officer Jimenez next advised Defendant, "Anything that you may say can and will be used against you in court. Do you understand that?" Defendant indicated he did not understand, and Officer Jimenez stated, "You don't understand."  (Ex. 5 at 2).  Officer Jimenez explained, "Our conversation, if the county attorney wants to use it against you they can use it against you. It doesn't mean they will use it against you, but if they need to use the interview against you or what you say it can be used against you. It doesn't mean they will use it but [it is] an option.  (Ex. 5 at 2).  Defendant asked, "What do I need to put?" Officer Jimenez asked Defendant if he understood and repeated his inquiry as to whether Defendant understood his right to remain silent.  (Ex. 5 at 2).  Officer Jimenez continued, "Right now you're detained, but we don't know if you are going to be arrested, but if this goes to court and whatever we talk about here can be used in court. Do you understand?  Defendant responded "yes."  (Ex. 5 at 2).  To confirm Defendant's understanding, Officer Jimenez again asked Defendant if he understood his right to remain silent, and Defendant again responded "yes."  (Ex. 5 at 2).

Officer Jimenez next advised Defendant, "You have the right to consult with a lawyer and have the lawyer with you during questioning," and asked Defendant if he understood.  (Ex. 5 at 2). Defendant responded, "As well as . . ." so Officer Jimenez further explained:

> Let[']s say that you tell me that you want a lawyer here, that's your right. If you tell me that you want a lawyer before speaking with me that's your right. If that happens then I can't ask you any questions we have to get in communication with a lawyer and wait for them to get here. That might take a while[,] and we might not wait that long.

(Ex. 5 at 2).  Defendant responded, "What lawyer am I going to get?" (Ex. 5 at 2).  Officer Jimenez replied that "the other question gives you the option," and asked again whether Defendant understood his right to an attorney.  (Ex. 5 at 2).  At the evidentiary hearing, Officer Jimenez testified that the "option" he was referring to was Defendant's option to either to pay for a lawyer or for the court to appoint one.  (TR. 31).  Officer Jimenez did not present a third opinion of "you just continue to talk to me without a lawyer."  (TR. 32).

Defendant responded, "Is it the same?" and Officer Jimenez replied, "I read it to you to see if you understand it."  (Ex. 5 at 2).  Defendant stated, "I can't get a lawyer," and Officer Jimenez replied, "[i]f you can't afford a lawyer, that's not what the question is asking[,] it's saying that if you want you can consult with a lawyer before you and me talk.  That's what the question is saying. If you understand the question then I need a yes or no."  (Ex. 5 at 2).  Defendant says he understands but "I can't get a lawyer. It's impossible."  (Ex. 5 at 2).  Officer Jimenez explained to Defendant that the court will appoint a lawyer if Defendant cannot afford it, and stated "[w]hat that means is if you don't have the money to employ your own lawyer the court will give you one.  They will assign a lawyer to you.  That's what that question means."  (Ex. 5 at 2).  Defendant said, "okay," and Officer Jimenez further explained, "[i]f you don't have the money to get your own lawyer the court will assign someone for you[,] and they will represent you in court. That's what that question means." Although he referenced a "court" proceeding, Officer Jimenez did not specifically clarify that an attorney could represent Defendant during the interrogation.  (TR. 32).  Officer Jimenez again repeated the advisory regarding Defendant's right to an attorney and asked Defendant whether he understood.  (Ex. 5 at 3).  Defendant responded with "yes," but immediately after that stated something else, which Officer Jimenez transcribed as "unintelligible," and which the parties dispute.  (*See* TR. 24, 39-40, 43; Ex. 5 at 3).  Officer Jimenez then asked, "[k]nowing your rights in this matter, are you willing to talk to me now?" to which Defendant replied "[y]es."  Officer Jimenez replied, "Okay, perfect."  (TR. 33; Ex. 5 at 3).

4

Officer Jimenez completed the rights advisory form on behalf of Defendant. (Ex. 1). Defendant also consented to a search of his cell phone. (Ex. 5 at 3). Officer Jimenez filled out a permission to search form (Ex. 2) for Defendant and continued the interview. (TR. 33). Defendant did not sign the rights advisory form, and Officer Jimenez testified to his belief that suspects are not "required" to sign the form, so long as the officer advises them of their *Miranda* rights. (TR. 34).

Officer Jimenez testified regarding the "unintelligible" statement Defendant made after being asked if he understood his right to an attorney. Officer Jimenez testified he did hear Defendant say something else besides "Yes," but he could not understand it until he rewatched the video of the interview. (TR. 24). Officer Jimenez did not originally include any translation of what Defendant said in Exhibit 5 aside from "Yes." (*See* Ex. 5; TR. 33). Even after reviewing the video a few times, Officer Jimenez testified that he is not one hundred percent certain whether Defendant said, "I understand" or "I don't understand," just that Defendant used the word "understand." (TR. 24, 36). Officer Jimenez later made a handwritten note to his translation that says "(unintelligible)" after Defendant's "yes" response. (*See* TR. 39-40, 43; Ex. 5 at 3).

Defense counsel called his law firm's receptionist, Mr. Rodriguez, to testify to his translation from Spanish to English of this "unintelligible" exchange. (TR. 42). Mr. Rodriguez testified that Spanish was his first language, he speaks it nearly every day, and that he provides Spanish translations weekly at the law firm. (TR. 42-43). Mr. Rodriguez testified he reviewed the video interrogation a "minimum" of fifteen times, and that he would translate Defendant's unintelligible statement as, "I don't know what you're saying." (TR. 44).

The Grand Jury returned a two Count Indictment on April 21, 2025, charging Defendant and two co-defendants with conspiracy to distribute methamphetamine, and charging Defendant with illegal reentry. (Filing No. 1). Defendant has filed the instant motion seeking suppression of all statements made during his custodial interrogation, asserting he did not knowingly and voluntarily waive his *Miranda* rights, and that he invoked his Fifth Amendment right to counsel. (Filing No. 38; Filing No. 39 at pp. 3-5). The Government disagrees. Defendant also moves to suppress any evidence obtained from the search of his cell phone, arguing his consent was the product of the unconstitutional interrogation. (TR. 7-8). During the evidentiary hearing, the Government stipulated it was not going to utilize any evidence obtained from Defendant's cell phone prior to the evidentiary hearing, but would not foreclose the possibility that it may use

evidence obtained from Defendant's cell phone if a search was performed at some point after the evidentiary hearing.   (TR. 8-9).

## ANALYSIS

### I.   Defendant's Waiver of *Miranda*

Defendant argues his Fifth Amendment rights were violated because he did not knowingly or voluntarily waive his *Miranda* rights prior to the custodial interview.  "The Fifth Amendment requires that *Miranda* warnings be given when a person is interrogated by law enforcement after being taken into custody." *United States v. Parker*, 993 F.3d 595, 601 (8th Cir. 2021) (quoting *United States v. Giboney*, 863 F.3d 1022, 1027 (8th Cir. 2017)); *see also Miranda v. Arizona*, 384 U.S. 436, 444-45 (1966).  Law enforcement must warn an individual that "he has a right to remain silent, that any statement he does make may be used against him, and that he has the right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444.  These warnings need not be given verbatim, but law enforcement must reasonably convey the *Miranda* rights to the accused.  *See Duckworth v. Eagan*, 492 U.S. 195, 202-03 (1989); *California v. Prysock*, 453 U.S. 355, 359-60 (1981); *Miranda*, 384 U.S. at 476 ("The warnings required and the waiver necessary in accordance with our opinion today are, in the absence of a fully effective equivalent, prerequisites to the admissibility of any statement made by a defendant.").  "[A]n individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation . . . ." *Miranda*, 384 U.S. at 471.  The Fifth Amendment does not merely protect a right to consult with counsel prior to questioning, but also the right "to have counsel present during any questioning if the defendant so desires." *Id.* at 470.  An individual must also be warned that "if he is indigent a lawyer will be appointed to represented him." *Id.* at 473.

A statement made "during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived [*Miranda*] rights' when making the statement. *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).  "'A statement is not voluntary if the totality of the circumstances shows the defendant's will was overborne,' and voluntary statements must not be the result of deception, intimidation, or coercion of the person giving the statement." *United States v. Jimenez*, 478 F.3d 929, 932-33 (8th Cir. 2007) (quoting *United States v. Annis*, 446 F.3d

6

852, 855 (8th Cir. 2006)).  Determining whether a suspect's waiver of *Miranda* was voluntary, knowing, and intelligent depends on a two-part analysis:

> First, the waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Second, the suspect must have waived his rights "with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."

*United States v. Vinton*, 631 F.3d 476, 483 (8th Cir. 2011) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).  When determining whether a suspect's waiver of *Miranda* was valid, the Court considers the totality of the circumstances.  *Id.* (citing *Moran*, 475 U.S. at 421).  After review of the evidence and testimony, the undersigned magistrate judge finds and concludes that Defendant's waiver of his *Miranda* rights was voluntary, knowing, and intelligent.

### a.    Voluntariness of Waiver

First, the undersigned magistrate judge finds Defendant's waiver of *Miranda* was voluntary.  Waiver of *Miranda* rights "can be clearly inferred from the actions and words of the person interrogated." *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).  "A voluntary waiver need not assume any particular form; it may be made in writing on a printed format or it may be made orally by replying to questions . . . ."  *United States v. Zamarripa*, 544 F.2d 987, 981 (8th Cir. 1976) (citing *United States v. Johnson*, 529 F.2d 581, 584 (8th Ci. 1975)).  The standard for determining the voluntariness of either a waiver of *Miranda* rights and/or a statement is the same.  See *Colorado v. Connelly*, 479 U.S. 157, 169-70 (1986).  "A statement is involuntary when it was extracted by threats, violence or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Boslau*, 632 F.3d 422 (8th Cir. 2011) (quoting *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004)).  "This determination must be made by looking at the totality of the circumstances, including both 'the conduct of the officers and the characteristics of the accused.'"  *United States v. Edwards*, 4:22CR678 SEP(SPM), 2024 WL 3741354 (E.D. Mo. Aug. 9, 2024) (quoting *LeBrun*, 363 F.3d at 724).  The Court considers, among other things, "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Boslau*, 632 F.3d at 428 (quoting *Sheets v. Butera*, 389 F.3d 772, 779 (8th Cir. 2004)).  "The government bears the burden of persuasion and must prove by a

preponderance of the evidence that the challenged statements were voluntary." *Id.* (quoting *LeBrun*, 363 F.3d at 724).

Although Defendant asserts his waiver of *Miranda* was not voluntary, see Filing No. 39 at p. 7; TR. 49, he discusses no factors or other circumstances to suggest he was intimidated, coerced, or deceived into waiving his rights. No evidence or testimony was offered to show that Defendant was intimidated, coerced, or threatened by the police prior to his interview, and the audio-visual recording of Defendant's interview likewise does not show any such tactics. Although Defendant was in custody, he was not handcuffed or restrained, and Officer Jimenez accommodated Defendant by allowing him to use the restroom and providing him water immediately upon request. Officer Jimenez spoke to Defendant one-on-one, and although Officer Jimenez was armed, he never gestured to or brandished his firearm or otherwise used it to imply any threat towards the Defendant. At no point did Officer Jimenez directly or indirectly threaten Defendant to waive his rights, and spoke to Defendant in conversational tones. Nor did Officer Jimenez deceive, coerce, or make any promises or misrepresentations to procure Defendant's waiver of *Miranda*. (TR. 17-20). The totality of the circumstances show that Defendant's will was not overborne when he waived his rights.

> *b.    Knowing and Intelligent Waiver*

Defendant primarily argues that he did not knowingly and intelligently waive *Miranda*. Specifically, Defendant argues his illiteracy and lack of education, the language barrier, his lack of prior criminal experience and time in the United States, and the apparent misunderstanding surrounding Defendant's right to counsel all demonstrate his waiver was not knowing and intelligent. (Filing No. 39 at pp. 7-10). For a suspect to have waived his rights, he must have done so "with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Vinton*, 631 F.3d at 483 (quoting *Moran*, 475 U.S. at 421). Whether a suspect understood the *Miranda* warnings is a question of fact. See *United States v. Osorio*, 110 F.4th 1089, 1099 (8th Cir. 2024). The Court considers, among other things, the length of time necessary for a suspect to understand his rights, whether the suspect understands the language officers are speaking to him, whether the suspect had the opportunity to read the *Miranda* warning form, and whether the suspect "appeared able to comprehend what was transpiring and the communicate effectively with detectives." *See id.* at 1099 ("He does not argue, for example, that

34 seconds is an inadequate length of time . . . . He . . . does not argue that he was unable to understand English. . . . [H]e does not explain why the district court erred in finding he 'had the opportunity to read the [*Miranda* Warning and Waiver] form'" (citations omitted)).  "Finally, '[e]ven if a suspect has a somewhat diminished capacity to resist coercion due to a mental defect . . . a *Miranda* waiver will not be invalidated on that basis if there is no evidence of police coercion.'" *Id.* (quoting *Vinton*, 631 F.3d at 483).

Here, Defendant claims that by stating "[i]f you don't have the money to get your own lawyer the court will assign someone for you and they will represent you in court," (Ex. 5 at 3), Officer Jimenez failed to fully inform Defendant of his right to have an attorney present during the questioning, making the waiver ineffective because it was not knowing and intelligent.  This argument ignores the multitude of times Officer Jimenez advised defendant of his right to an attorney during or before the questioning.  Officer Jimenez directly stated "[i]f you tell me you want a lawyer before speaking with me that's your right. If that happens then I can't ask you any questions . . . ."  (Ex. 5 at 2).  Officer Jimenez then advised that if Defendant could not afford a lawyer, "the court will appoint one to represent [him]. . . . What that means is if you don't have the money to employ your own lawyer the court will give you one."  (Ex. 5 at 2).  Officer Jimenez continued to make clarifying statements to ensure Defendant's understanding of his rights.  He even asked a final question that is not required under *Miranda*, "[k]nowing your rights in this matter, are you willing to talk to me now?" to which Defendant clearly answered yes.  (Ex. 5 at 3).

Officer Jimenez explained each *Miranda* right to Defendant, and though at times Defendant initially expressed some confusion or asked a question, Officer Jimenez continued to clarify and explain the meaning of each right until he responded "yes," he understood.  Although Defendant attributes a great deal of significance to his "unintelligible" statement after saying "yes," he understood his right to counsel, Defendant's precise statement does not sway the undersigned magistrate judge from concluding the totality of the circumstances reflects Defendant knowingly and intelligently waived *Miranda*.  Defendant was in his late thirties at the time of the interview, and Officer Jimenez testified Defendant seemed like a normal adult male, did not appear to act like a child, did not appear to be under the influence of drugs or alcohol, and did not have any physical disabilities or other obvious limitations.  Defendant only speaks Spanish, but Officer Jimenez is fluent in Spanish and there was no apparent difficulty in his conversing with Defendant in Spanish.  *See United States v. DaCruz-Mendes*, 970 F.3d 904, 909 (8th Cir. 2020) (holding that

the waiver was knowing and intelligent, even though the defendant alleged he did not speak Spanish well enough to understand because the defendant was able to speak with the officers in Spanish for over two hours). Defendant indicated he was unable to read or write, but Officer Jimenez read out loud and explained each *Miranda* advisement to Defendant in Spanish, asking if Defendant understood after each advisement. Additionally, Defendant's inability to read or write alone does not render his waiver invalid when he was otherwise advised of his rights. *See Vinton*, 631 F.3d at 483 ("Even if a suspect has a somewhat diminished capacity to resist coercion due to a mental defect, however, a *Miranda* waiver will not be invalidated on that basis if there is no evidence of police coercion.") (citing *United States v. Makes Room*, 49 F.3d 410, 415 (8th Cir. 1995)). While Defendant's illiteracy did make him dependent on Officer Jimenez's verbal explanation of his rights, at any time Defendant expressed hesitation or confusion or otherwise did not definitely say, "yes," he understood his right, Officer Jimenez explained and clarified until Defendant had enough information to state "yes," he understood. While Defendant had no prior criminal history and no prior familiarity with the custodial interrogation procedures, Officer Jimenez spent significant time explaining and clarifying his rights, to which Defendant responded that he understood and nevertheless proceeded to speak to Officer Jimenez and waive those rights. Under the totality of the circumstances, the undersigned magistrate judge finds Defendant's waiver was knowing and intelligent.

For the foregoing reasons, the undersigned magistrate judge finds Defendant voluntarily, knowingly and intelligently waived his *Miranda* rights, and thus recommends his motion to suppress his statements be denied.

## II.    Invocation of the Right to Counsel

Next, Defendant argues that even if he did voluntarily, knowingly, and intelligently waive his *Miranda* rights, he invoked his right to counsel during the custodial interrogation when he asked the question "[w]hat lawyer am I going to get?" (Filing No. 39 at p. 10). Once an accused invokes his right to counsel, the interrogation must immediately cease until an attorney is present. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981) (citing *Miranda*, 384 U.S. at 474). "[P]olice may 'scrupulously honor' that right by 'immediately ceas[ing] the interrogation, resum[ing] questioning only after the passage of a significant period of time and the provision of a fresh set of warnings . . . ." *Arizona v. Roberson*, 486 U.S. 675, 683 (1988). Statements made after invoking

the right to counsel are inadmissible, unless communication is initiated by the accused. *Id.* at 681. One's request for counsel "must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States*, 512 U.S. 452, 459 (1994). "If the suspect's statement is not an unambiguous or unequivocal request for counsel, the officers have no obligation to stop questioning him." *Id.* at 461-62. This is an objective standard, meaning a reasonable officer in the circumstances would understand the request for counsel. *Id.* at 459. Officers are not required to ask clarifying questions. *Id.* at 461; see also *United States v. Mohr*, 772 F.3d 1143, 1146 (8th Cir. 2014) ("[T]he Supreme Court has declined to adopt a rule requiring officers to clarify ambiguous requests for counsel."). The Eighth Circuit Court of Appeals has "consistently held that only a clear and unequivocal request for the assistance of counsel may serve to invoke a defendant's right." *United States v. Kelly*, 329 F.3d 624, 630 (8th Cir. 2003).

The undersigned magistrate judge finds Defendant's statement "[w]hat lawyer am I going to get?" was not an unequivocal request for counsel. A reasonable officer under the circumstances could have believed Defendant was inquiring about the kind of lawyer he would have, not invoking his right to counsel. *See Dormire v. Wilkinson*, 249 F.3d 801, 805 (8th Cir. 2001) (finding "Could I call my lawyer" was not an unambiguous request for counsel because a reasonable officer under the circumstances could have believed the suspect was "merely inquiring whether he had the right to call a lawyer"). Defendant's statement was a clarifying question about his ability to obtain counsel, which was answered by Officer Jimenez by reading the next *Miranda* warning to Defendant. *See United States v. Havlik*, 710 F.3d 818, 821-22 (8th Cir. 2013) (holding "I don't have a lawyer. I guess I need to get one, don't I?" to be "a request for advice about whether to seek counsel, rather than a request for counsel."). A reasonable officer under the circumstances would not have understood this to be a request for counsel to be present. *See Davis*, 512 U.S. at 455, 459-61 (holding "maybe I should talk to a lawyer" to be equivocal); *see also Havlik*, 710 F.3d at 822 (holding "I guess you should get me a lawyer then" to be equivocal due to the phrase "I guess"). Under these facts, the undersigned magistrate judge finds the Defendant's statement "[w]hat kind of lawyer am I going to get?" was not an unequivocal request for counsel, and therefore questioning did not need to cease. The undersigned magistrate judge will therefore recommend Defendant's motion to suppress be denied.

11

Finally, Defendant argues his consent to search his cell phone was the fruit of the constitutional violations arising out of his interrogation. (Filing No. 39 at pp. 4-5). Because the undersigned magistrate judge finds Defendant's interrogation did not violate his constitutional rights, his consent to search his cell phone is not a product of any constitutional violation. Upon consideration,

**IT IS HEREBY RECOMMENDED** to Brian C. Buescher, United States District Court Judge, that Defendant's Motion to Suppress (Filing No. 38) be denied.

Dated this 3rd day of November, 2025.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.